UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ELIZABETH M. GIESKE, an Individual, as Executor for the Estate of ANN MAY MOORE, on Behalf of Herself and All Others Similarly Situated, | § § § § § | |
| | § | Civil Action No. 1:17-cv-00684 |
| Plaintiff, | § § | |
| v. | § § | |
| WHOLE FOODS MARKET, INC., JOHN P. MACKEY, WALTER ROBB, JONATHAN SEIFFER, GABRIELLE SULZBERGER, SHAHID HASSAN, STEPHANIE A. KUGELMAN, JOE MANSUETO, MARY ELLEN COE, KENNETH C. HICKS, SHARON L. MCCOLLAM, RONALD M. SHAICH, and SCOTT F. POWERS, | § § § § § § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT
FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff Elizabeth M. Gieske, an individual, as executor for the estate of Ann May Moore ("Plaintiff"), by and through her undersigned counsel, for her complaint against Defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought on behalf of the public stockholders of Whole Foods Market, Inc. ("Whole Foods" or the "Company") against Whole Foods and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S.

Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which Whole Foods will be acquired by Amazon.com, Inc. ("Amazon"), through its wholly owned subsidiary, Walnut Merger Sub, Inc., ("Merger Sub") (the "Proposed Transaction").

2.      On June 16, 2017, Whole Foods and Amazon issued a press release announcing that they had entered into an Agreement and Plan of Merger dated June 15, 2017 (the "Merger Agreement") to sell Whole Foods to Amazon.   Under the terms of the Merger Agreement, Amazon will acquire all outstanding shares of Whole Foods for $42.00 in cash per Whole Foods share (the "Merger Consideration").   The Proposed Transaction is valued at approximately $13.7 billion.

3.      On July 7, 2017, Whole Foods and Amazon filed with the SEC a Preliminary Proxy Statement on Schedule 14A (the "Proxy") in connection with the Proposed Transaction. The Proxy, which recommends that Whole Foods stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Whole Foods management's projections, including the projections utilized by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in its financial analyses (the "Management Projections"); (ii) the valuation analyses prepared by Evercore in connection with the rendering of its fairness opinion; (iii) Evercore's potential conflicts of interest; and (iv) Whole Foods insiders' potential conflicts of interest.   The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Whole Foods stockholders need such information in order to cast a fully informed vote or make an appraisal decision in connection with the Proposed Transaction.

4.      In short, the Proposed Transaction is designed to unlawfully divest Whole Foods' public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy Defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Whole Foods is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Whole Foods.

9.      Defendant Whole Foods is a Texas corporation incorporated in 1978.  It maintains principal executive offices at 550 Bowie Street, Austin, Texas, 78703.  Whole Foods' common stock is traded on the NASDAQ under the ticker symbol "WFM."

10.     Defendant John P. Mackey ("Mackey") is the Company's co-founder and has served as a director of the Company since 1978 and as Co-Chief Executive Officer ("CEO") of the Company since May 2010.  Defendant Mackey previously served as Whole Foods' CEO from 1978 to May 2010, as President from 2001 to 2004 and as Chairman of the Board from 1978 to December 2009.

11.     Defendant Walter Robb ("Robb") has served as a director of the Company since May 2010 and as Co-CEO, alongside Defendant Mackey, since May 2010.  He previously served as Whole Foods' Co-President and Co-Chief Operating Officer ("COO") from 2004 to May 2010, as COO from 2001 to 2004, and as Executive Vice President from 2000 to 2001.

12.     Defendant Jonathan Seiffer ("Seiffer") has served as a director of the Company since December 2008.

13.     Defendant Gabrielle Sulzberger ("Sulzberger") has served as a director of the Company since 2003.

14.     Defendant Shahid Hassan ("Hassan") has served as a director of the Company since 2005.

15.     Defendant Stephanie A. Kugelman ("Kugelman") has served as a director of the Company since November 2008.

16.     Defendant Joe Mansueto ("Mansueto") has served as a director of the Company since May 10, 2017.

17.    Defendant Mary Ellen Coe ("Coe") has served as a director of the Company since November 2016.

18.    Defendant Kenneth C. Hicks ("Hicks") has served as a director of the Company since May 10, 2017.

19.    Defendant Sharon L. McCollam ("McCollam") has served as a director of the Company since May 10, 2017.

20.    Defendant Ronald M. Shaich ("Shaich") has served as a director of the Company since May 10, 2017.

21.    Defendant Scott F. Powers ("Powers") has served as a director of the Company since May 10, 2017

22.    Defendants referenced in paragraphs 10 to 21 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

23.    Amazon is an American electronic commerce and cloud computing company that was founded in 1994.  Amazon's principal corporate offices are located at 410 Terry Avenue North, Seattle, Washington, 98109-5210.  Amazon's common stock is traded on the NASDAQ under the ticker symbol "AMZN."

24.    Merger Sub is a Texas corporation and an indirect wholly owned subsidiary of Amazon.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Whole Foods common stock (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate

families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

27.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of July 2, 2017, there were 335,015,401 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Whole Foods or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

     (a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

     (b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

     (c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

32.     Whole Foods opened its first Whole Foods Market store in 1980.  Today, Whole Foods is the leading national natural and organic foods supermarket, with 440 stores across 42 U.S. states and the District of Columbia; 12 stores in Canada; and 9 stores in the United Kingdom, as of April 9, 2017.

33.     On November 2, 2016, Whole Foods issued a press release announcing its financial results for the fourth quarter and year ended September 25, 2016, including record sales of $3.5 billion for the fourth quarter of 2016.  Commenting on the successful quarter, Defendant Mackey stated:

> In a year that presented many headwinds for food retailers, we made measurable progress on positioning our company for continued success while producing industry-leading sales per gross square foot and healthy returns on invested capital[.]  Through our strong balance sheet and robust cash flow, we self-funded our new store development and technology investments and, in keeping with our capital allocation strategy, returned more than $1.1 billion to our shareholders through dividends and share repurchases.

In the press release, Defendant Robb further stated:

> Food retailing is evolving at an incredibly fast pace, and consumers have many more options for how and where they buy their food than ever before.  At the same time, the market opportunity is expanding as the consciousness about fresh, healthy foods continues to awaken[.]  Our company mission and commitment to transparency are more relevant and timely than ever, and we will keep innovating

7

and creating environments where people can connect and find a sense of community - in our stores and in the digital world.

34.     On February 8, 2017, Whole Foods issued a press release announcing its financial results for the first quarter of the year ended January 15, 2017, including a 1.9% increase in total sales to a record $4.9 billion.

**The Sale Process**

35.     On April 10, 2017, activist investor JANA Partners ("JANA"), together with certain affiliates, consultants and potential director candidates that JANA intended to sponsor, filed a Schedule 13D with the SEC disclosing that they had acquired approximately 8.8% of the Company's outstanding common stock, making JANA Whole Foods' second largest stockholder.

36.     Facing an impending proxy contest and potential ouster, on April 17, 2017, the Board appointed Evercore as the Company's financial advisor.

37.     Following the filing of JANA's April 10, 2017 Schedule 13D, the Company received multiple unsolicited solicitations.  On April 18, 2017, Defendant Mackey received a letter from an industry participant identified in the Proxy as Company X, expressing interest in a strategic transaction.  Then, between April 20, 2017, and May 4, 2017, various representatives of the Company and/or Evercore received separate inquiries from four private equity firms regarding their respective interests in pursuing a leveraged buy-out, private investment in public equity, or other transaction.

38.     On April 21, 2017, following media reports that stated Amazon may have previously considered buying Whole Foods, Defendant Mackey authorized one of the Company's outside consultants (the "Outside Consultant") to contact Amazon to see if Amazon would be interested in a meeting to discuss a potential strategic transaction.

39.     On April 24, 2017, the Board met telephonically to discuss Company X's interest and an upcoming meeting with JANA.  That same day, the Outside Consultant spoke to Peter Krawiec, Amazon's Vice President of Worldwide Corporate Development, and learned that Amazon was interested in a potential transaction between the two entities.

40.     On April 26, 2017, senior representatives of JANA met with Defendant Mackey and other members of Whole Foods' management to discuss changes to the Board.  The Company subsequently agreed to interview potential director candidates sponsored by JANA in addition to the individuals who had been identified as part of the Company's own Board refreshment process.

41.     On May 8, 2017, a second industry participant identified in the Proxy as Company Y expressed interest in a potential business relationship with Whole Foods.

42.     On May 18, 2017, Whole Foods held discussions with Company X and Company Y regarding their respective interests.  During a meeting with Company X, Company X suggested a merger-of-equals transaction, which they believed would be potentially valued at $35.00 to $40.00 per share to the Company's shareholders.  Company Y expressed interested in a possible commercial relationship with the Company.

43.     On May 23, 2017, Whole Foods received a written offer from Amazon to acquire the Company at a price of $41 per share.  In its letter, Amazon stated that it had the right to terminate talks if there was any leak or rumor regarding Amazon's interest.

44.     The next day, the Board met to discuss Amazon's letter and considered potential alternatives and the Company's long-term outlook and business plans, including the risks thereof.   The Company's long-term outlook plan (i.e., Whole Foods' management's projections), was subsequently updated and reviewed by the Board two days later.  The Proxy

fails to disclose any information regarding this eleventh hour revision to the Company's projections, including the risks identified by the Board at its May 24, 2017 Board meeting, the basis of the subsequent update to the projections prior to the May 26, 2017 Board meeting, and whether there were any further revisions to the long-term outlook plan before the Management Projections were provided to Evercore for use in its valuation analyses in connection with the rendering of its fairness opinion.

45.    On May 25, 2017, Amazon's financial advisor reiterated to Evercore that Amazon was very sensitive with respect to confidentiality, and that Amazon was not willing to engage in a multiparty sale process.

46.    At a May 30, 2017 Board meeting, the Board discussed the Company's long-term outlook, associated business plans, underlying assumptions and timelines and key risks that could affect the Company's ability to achieve the long-term plan, the details of which are not disclosed in the Proxy.  The Board also reviewed discussions between the Company and Amazon, as well as the overtures made by other third parties, including Company X, Company Y, and the four private equity firms that had previously contacted representatives of the Company and/or Evercore.  In light of Amazon's sensitivity with respect to confidentiality, the Board elected not to engage with these potential counterparties or solicit proposals from the private equity firms, given concerns about potential leaks and the fact that the price proposed by Amazon purportedly likely exceeded the price level that a private equity buyer could reasonably be expected to pay.  Following these discussions, the Board directed management to make a counter-proposal to Amazon at $45.00 per share.

47.    On June 1, 2017, Amazon proposed a merger price of $42.00 per share, and further indicated it was Amazon's best and final offer.  That same day, the Board met to discuss

the on-going negotiations with Amazon and unanimously determined to move forward at the $42 per share offer price.

48.    On June 15, 2017, the Board met telephonically to discuss the terms of Amazon's final proposal to acquire the Company for $42.00 per share.  During this meeting, Evercore delivered its fairness opinion and the Board voted to approve the Proposed Transaction.

49.    Following the meeting, the Company, Amazon, and Merger Sub executed the Merger Agreement.

**The Proposed Transaction**

50.    On June 16, 2017, Whole Foods and Amazon issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> SEATTLE and AUSTIN, Texas, June 16, 2017 -- Amazon (NASDAQ:AMZN) and Whole Foods Market, Inc. (NASDAQ:WFM) today announced that they have entered into a definitive merger agreement under which Amazon will acquire Whole Foods Market for $42 per share in an all-cash transaction valued at approximately $13.7 billion, including Whole Foods Market's net debt.

> "Millions of people love Whole Foods Market because they offer the best natural and organic foods, and they make it fun to eat healthy," said Jeff Bezos, Amazon founder and CEO.  "Whole Foods Market has been satisfying, delighting and nourishing customers for nearly four decades – they're doing an amazing job and we want that to continue."

> * * *

> Whole Foods Market will continue to operate stores under the Whole Foods Market brand and source from trusted vendors and partners around the world. John Mackey will remain as CEO of Whole Foods Market and Whole Foods Market's headquarters will stay in Austin, Texas.

> Completion of the transaction is subject to approval by Whole Foods Market's shareholders, regulatory approvals and other customary closing conditions.  The parties expect to close the transaction during the second half of 2017.

**Insiders' Interest in the Proposed Transaction**

51.    Amazon and Whole Foods insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Whole Foods.

52.    Notably, it appears that certain members of Company management have secured positions for themselves following completion of the Proposed Transaction.  According to Whole Foods' and Amazon's joint June 16, 2017 press release announcing the Proposed Transaction, "John Mackey will remain as CEO of Whole Foods Market . . . ."

53.    Further, Company insiders stand to reap a substantial financial windfall for securing the deal with Amazon.  Pursuant to the Merger Agreement, all unvested equity-based awards held by Company executives will be converted into the right to receive cash payments. The following tables set forth the cash payments Whole Foods' executive officers stand to receive in connection with their unvested equity awards:

| Name | Company Stock Options ($) | Company Restricted Stock Awards ($) | Company Restricted Stock Unit Awards ($) |
|---|---|---|---|
| John Mackey | — | — | — |
| Walter E. Robb, IV | 55,760 | — | — |
| Glenda Flanagan | 313,077 | 212,688 | — |
| Keith Manbeck | 120,200 | — | 420,000 |
| A.C. Gallo | 72,744 | 1,163,442 | — |
| David Lannon | 170,022 | 212,688 | — |
| Jason Buechel | 479,725 | 50,232 | — |

54.    Moreover, if they are terminated in connection with the merger, Whole Foods' named executive officers will receive substantial severance benefits, including cash payments, in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| John Mackey | — | — | — | — |
| Walter E. Robb, IV(4) | — | 55,760 | — | 55,760 |
| Glenda Flanagan | 2,571,423 | 525,765 | 4,158 | 3,101,346 |
| Keith Manbeck | 3,241,667 | 540,200 | — | 3,781,867 |
| A.C. Gallo | 2,571,423 | 1,236,186 | 17,478 | 3,825,086 |
| David Lannon | 2,571,423 | 382,710 | 13,338 | 2,967,471 |
| Jason Buechel | 5,705,635 | 529,957 | 4,680 | 6,240,272 |

## The Proxy Contains Numerous Material Misstatements or Omissions

55.     Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Whole Foods' stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

56.     Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Whole Foods management's projections, including the Management Projections utilized by the Company's financial advisor, Evercore, in its financial analyses; (ii) the valuation analyses prepared by Evercore in connection with the rendering of its fairness opinions; (iii) Evercore's potential conflicts of interest; and (iv) Whole Foods insiders' potential conflicts of interest. Accordingly, Whole Foods stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

### *Material Omissions Concerning Whole Foods' Financial Projections*

57.     The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

58.     The Proxy fails to disclose material information relating to the Company's Management Projections provided by Whole Foods' management and relied upon by Evercore for its analyses.

59.     For example, the Proxy sets forth:

Evercore performed a discounted cash flow analysis, which is designed to estimate the value of a company by calculating the present value of estimated future cash flows of the company.  Evercore calculated a range of equity values per share of Whole Foods Market based on a discounted cash flow analysis for the fiscal years 2017 through 2022.  In preparing its analysis, Evercore relied on the Whole Foods Market Projections; in addition, for purposes of calculating terminal year cash flow, Evercore derived, and the Company confirmed the reasonableness of deriving, fiscal year 2022 EBITDA and unlevered free cash flow by increasing 2021 revenues by the same percentage as the percentage revenue growth from 2020 to 2021 and holding operating margins constant at 2021 levels (together with the Whole Foods Market Projections, the "Management Estimates").  For comparative purposes, Evercore also performed a discounted cash flow analysis based upon publicly available equity research analysts' reports that provided projections through fiscal year 2021 and were published after May 10, 2017, and as to which Evercore similarly derived fiscal year 2022 financial metrics ("Public Equity Analysts' Estimates").

In arriving at the estimated equity values per share of Company common stock, Evercore estimated a range of terminal values in 2022 by applying to Whole Foods Market's fiscal year 2022 estimated EBITDA, a multiple of Enterprise Value to EBITDA of 7.0x to 9.5x and by applying a perpetuity growth rate of 2.5% to 3.5%.  Evercore then discounted Whole Foods Market's projected, unlevered free cash flows, included in the Management Estimates and the Public Equity Analysts' Estimates and the estimated terminal value for each scenario, in each case, to a present value using discount rates ranging from 7.0% to 9.0%. The discount rates were based on Evercore's judgment of the estimated range of Whole Foods Market's weighted average cost of capital.  Evercore calculated unlevered free cash flow by first deriving net operating profit after tax by subtracting depreciation and amortization from EBITDA and assuming a 39.0% tax rate, then adjusting the result by adding back depreciation and amortization, subtracting capital expenditures and adjusting for changes in net working capital.

Proxy at 40.  The Proxy, however, fails to disclose the Company's unlevered free cash flows for fiscal years 2017-2022 and the line items used to calculate unlevered free cash flows.  The Proxy

also fails to disclose the "Public Equity Analysts' Estimates" utilized by Evercore in its discounted cash flow analysis.

60.    The Proxy also discloses projections for various non-GAAP metrics including EBITDA and Free Cash Flow, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to GAAP. The omission of the aforementioned line item projections renders the non-GAAP projections included in the Proxy materially misleading and incomplete.

61.    The importance of reconciling between GAAP and non-GAAP financial measures has long been widely acknowledged. The SEC adopted "Regulation G" in 2003, in response to the mandate set forth in Section 401(b) of the Sarbanes-Oxley Act that rules be enacted to regulate the use of pro forma financial information. Regulation G prohibits the use of non-GAAP financial measures outside of SEC filings unless they are accompanied by the most directly comparable GAAP accounting measure, as well as a reconciliation of the two. Such reconciliations were deemed necessary to address the proliferation of non-GAAP financial measures lacking a uniform definition and therefore carrying the risk of misleading investors.

62.    In addition, according to the Proxy, "[o]n May 4, 2017, the Company provided Amazon.com with an earlier version of the [Management] Projections." Proxy at 35. However, the Proxy fails to disclose any information concerning the eleventh hour update to these earlier projections, including but not limited to (i) the full details of the previous projections including unlevered free cash flows and the line items used to calculate unlevered free cash flows; (ii) the timing and basis of the update(s) to the previous projections, including the risks identified by the Board at its May 24 and May 30, 2017 Board meetings; and (iii) when the Management

Projections utilized by Evercore were finalized. Notably, the midpoint of the range of implied values per share of $37.11 to $51.22 (terminal multiple methodology) and $36.05 to $65.01 (perpetuity growth rate methodology), resulting from the *Discounted Cash Flow Analysis* Evercore performed utilizing the Management Projections, is well above the $42 per share Merger Consideration. The timing of and basis for the eleventh hour updates to the previous projections is critical to allow Whole Foods stockholders to observe whether the Management Projections utilized by Evercore were created solely to be able to fit the Merger Consideration of $42 per share into a range of "fairness."

63.     The omission of this information renders the statements in the "Certain Whole Foods Market Unaudited Prospective Financial Information" and "Summary of Evercore's Financial Analysis" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Evercore's Financial Analyses***

64.     The Proxy describes Evercore's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Whole Foods' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Whole Foods' stockholders.

65.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) as mentioned above, fiscal year 2017-2022 unlevered free cash flows utilized by

Evercore in this analysis and the line items used to calculate unlevered free cash flows; (ii) fiscal year 2022 EBITDA and the line items used in calculating 2022 EBITDA; (iii) the estimated range of terminal values of Whole Foods; and (iv) the inputs and assumptions underlying the discount rate range of 7.0% to 9.0%.

66.    With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Evercore in the analysis.  A fair summary of such an analysis requires the disclosure of the individual multiples for each company utilized or, at a minimum, the high, low, mean and median multiples.  Merely providing the range that a banker applied is insufficient, as stockholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company.

67.    With respect to Evercore's *Illustrative DCF Sensitivity Analysis*, the Proxy fails to disclose any of the projections calculated under the "sensitivity analysis."

68.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

69.    The omission of this information renders the statements in the "Summary of Evercore's Financial Analysis" and "Certain Whole Foods Market Unaudited Prospective

Financial Information" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Evercore's Potential Conflicts of Interest***

70.    The Proxy provides:

> Pursuant to the terms of Evercore's engagement letters with the Company, the Company has paid Evercore monthly retainer fees, agreed to certain fees in connection with potential acquisition proposals it may receive and other strategic shareholder advisory matters, and paid a fee of   $3 million upon delivery of Evercore's opinion to the Whole Foods Market board of directors, regardless of the conclusion reached therein.  The Company has also agreed to pay Evercore an additional transaction fee, based upon a percentage of the transaction value of the merger, estimated to be approximately $45 million, which is contingent upon the closing of the merger and against which the retainer fees, strategic shareholder advisory fees and opinion fee shall be credited.

Proxy at 43.  The Proxy, however, fails to disclose the amount of the retainer fees and the "certain fees in connection with potential acquisition proposals [Evercore] may receive and other strategic shareholder advisory matters" to be paid to Evercore by the Company.  *Id.*

71.    Additionally, the Proxy provides that, "[a]side from its current engagement by Whole Foods Market, Evercore has not in the past two years provided financial advisory or investment banking services to Whole Foods Market for which Evercore has received compensation."  *Id.*   However, Evercore's opinion letter, attached to the Proxy as Annex B, states that, "[p]rior to this engagement, we, Evercore Group L.L.C., and its affiliates provided financial advisory services to the Company and had received fees for the rendering of these services including the reimbursement of expenses."  Defendants must provide an explanation for these misleading and inconsistent statements, and also disclose the nature of the past services provided by Evercore to the Company and the amount of fees received by Evercore for such services.

72.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

73.    The omission of this information renders the statements in the "Background of the Merger" and "Opinion of Whole Foods Market's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Insiders' Potential Conflicts of Interest***

74.    The Proxy also materially misleads stockholders as to the potential conflicts of interest faced by Whole Foods management and the Board.

75.    The Proxy sets forth that:

> In connection with negotiating the merger agreement, Amazon.com had preliminary discussions with certain of the Whole Foods Market executive officers regarding its desire to retain such officers following the closing. While Amazon.com may enter into new agreements with those individuals, at this time there is no assurance that those discussions will result in any new agreements with Amazon.com or, if so, what the terms and conditions of any such agreements would be.

Proxy at 46.  In addition, according to the June 16, 2017 joint press release announcing the Proposed Transaction, "John Mackey will remain as CEO of Whole Foods Market and Whole Foods Market's headquarters will stay in Austin, Texas."  However, the Proxy fails to disclose the timing and nature of all communications regarding Defendant Mackey's future employment, as well as communications involving future employment and/or directorship of any other Whole Foods executive officers and directors, including who participated in all such communications. The Proxy further fails to disclose whether any of Amazon's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

76.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

77.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act

78.     Defendants' failure to provide Whole Foods stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

79.     Plaintiff repeats all previous allegations as if set forth in full.

80.     SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

81.    During the relevant period, Defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

82.    By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by Defendants. The Proxy misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

83.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction and whether to seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

84.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

85.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

86.     Plaintiff repeats all previous allegations as if set forth in full.

87.     The Individual Defendants acted as controlling persons of Whole Foods within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Whole Foods and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

88.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

89.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

90.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

91.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

92.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Whole Foods, and against Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Whole Foods stockholders;

C.     In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED:  July 18, 2017.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010

Melissa A. Fortunato
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue, Suite 3040
New York, NY  10022
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email:  fortunato@bespc.com